**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JEFFREY KIRKLAND,**

      **Petitioner,**

**v.**                                   **Case No. 8:13-cv-1545-T-27TGW**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Petitioner Jeffrey Kirkland, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida, in 2011. Respondent's response (Dkt. 13) concedes the petition's timeliness. Petitioner did not file a reply. Upon review, the petition must be denied.

### PROCEDURAL HISTORY

Petitioner entered a plea of nolo contendere to robbery with a firearm (count one) and carrying a concealed firearm (count two). (Dkt. 15, Ex. 1.) He was sentenced to concurrent terms of ten years in prison followed by three years of probation on count one and five years in prison on count two. (Dkt. 15, Ex. 3.) Petitioner did not appeal the judgments and sentences. He filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and an amended motion. (Dkt. 15, Exs. 4, 6.) Petitioner's postconviction claims were summarily denied. (Dkt. 15, Exs. 5, 9.) The state appellate court *per curiam* affirmed the denial of postconviction relief. (Dkt.

15, Ex. 12.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially

indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the rejection of postconviction relief.  This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Review of the state court decision is limited to the record that was before the state court.  *Pinholster,* 563 U.S. at 180-81.

Petitioner bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice.   Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.  However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked

adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground One**

In Ground One, Petitioner asserts that counsel was ineffective for coercing, threatening, or scaring him into entering his plea "by failing to adequately explain the plea and by telling him that if he did not take the plea he would spend 15 years in prison on count two, and 40 years to life on

count one." (Dkt. 1, p. 5.)  The following occurred at the change of plea hearing:

> [COUNSEL]: [] This is a negotiated plea.  Mr. Kirkland is going to plead no contest to both counts of the Information.  The agreement is he'd be sentenced to 10 years mandatory Florida State Prison followed by 3 years probation.
>
> . . .
>
> THE COURT: [] Mr. Kirkland raise your right hand.  Do you swear or affirm that the testimony you are about to give will be the truth, the whole truth, nothing but the truth so help you God?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You can put your hand down.  You under the influence of any alcohol, narcotics, or any medication?
>
> THE DEFENDANT:  No, Sir.
>
> THE COURT: Have you ever been treated or hospitalized for any mental illness?  He'll give them back to you he's just going to set them right over here on the table right here.  You said you're not under the influence of any alcohol, narcotics or medication?
>
> THE DEFENDANT: No, Sir.
>
> THE COURT: Okay.  And have you ever been treated or hospitalized for any mental illness?
>
> THE DEFENDANT: No, Sir.
>
> THE COURT: I've been handed a felony plea form, it's four pages in length.  The bottom of the fourth page where it says Defendant; is that your signature?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: It's dated January 28th, 2011.  Did you read and sign that today?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Did you understand what you read?
>
> THE DEFENDANT: I believe so.

THE COURT: Okay.  Do you want some time to go over it with your attorney?

THE DEFENDANT: No.

THE COURT: So you have any specific questions - -

THE DEFENDANT: No, sir.

THE COURT: - - that you.  So you discussed this with your attorney?

THE DEFENDANT: Yes, Sir.

THE COURT: You're satisfied with the services of your attorney?

THE DEFENDANT: Yes, Sir.

THE COURT: And you've asked him all the questions that you want to ask him about this form?

THE DEFENDANT: Yes, Sir.

THE COURT: Alright.  The plea form that you've signed indicates that you are charged with Robbery with a Firearm, felony punishable by life in prison with a 10 year minimum, mandatory.  As to that charge how do you plead?

THE DEFENDANT: No contest.

THE COURT: As to Count 2, Carrying a Concealed Firearm, a third degree felony punishable up to five years in State Prison.  As to that charge how do you plead?

THE DEFENDANT: No contest.

THE COURT: Has anyone promised you anything other than what's laid out in the plea form in order to get you to enter your plea?

THE DEFENDANT: No, Sir.

THE COURT: Anybody forced, coerced, or threatened you to get you to enter your plea?

THE DEFENDANT: No, Sir.

THE COURT: Do you understand when you enter your plea of no contest that you

are giving up your right to have a trial in your case?

THE DEFENDANT: Yes, Sir.

THE COURT: Understand you are giving up your right to have the State prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, Sir.

THE COURT: Understand you are giving up your right to see and hear whatever evidence the State would have to put on in order to prove you guilty and that you are giving up your right to put on evidence and to cross examine witnesses?

THE DEFENDANT: Yes, Sir.

THE COURT: Understand if you have any legal defenses that you are waiving those with your plea?

THE DEFENDANT: Yes, Sir.

. . .

THE COURT: Do you understand the consequences of this plea?

THE DEFENDANT: Yes.

THE COURT: Do you feel like the plea is in your best interest?

THE DEFENDANT: Yes.

THE COURT: Have you understood all of the questions that I just asked you?

THE DEFENDANT: Yes, Sir.

(Dkt. 15, Ex. 2, pp. 2-7.)  Petitioner also asked to give a letter of apology to the robbery victim. (Id., pp. 8-9.)

The record supports the conclusion that Petitioner's plea was voluntary. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*,

400 U.S. 25, 31 (1970).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).[1]

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [and] his lawyer [at a plea hearing] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).  The record reflects that Petitioner understood the charges, the maximum term he faced, and the rights he was waiving.  The record further shows that Petitioner was not forced to enter the plea and believed pleading to the charges to be in his best interest. Petitioner makes no allegation that his statements at the change of plea hearing were false. Accordingly, the record supports the conclusion that Petitioner's plea was voluntary.

When Petitioner argued in his postconviction motion that counsel was ineffective for forcing or coercing him into entering the plea, the state court initially denied the ground in part and dismissed it in part:

---

[1] Petitioner's nolo contendere plea is subject to the same analysis as a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.  The rule is the same for pleas of guilty or *nolo contendere*.").  *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

In claim 1, Defendant argues that trial counsel was ineffective for coercing him and scaring him into entering a plea of nolo contendere. Defendant claims that trial counsel told him he would get 15 years FSP for the robbery or he could get at least 40 years for the armed robbery. Defendant also claims that trial counsel did not read the plea agreement to him, did not explain it, and did not explain the sentencing scoresheet.

The charge of robbery with a firearm is punishable by life in prison with a 10 year minimum mandatory sentence. Had the Defendant just been convicted of robbery, he could be subject to up to 15 years Florida State Prison for the second degree felony. Counsel's representation as to the amount of time Defendant could get is accurate and Defendant was properly advised.

During the plea colloquy, Defendant told the Court that he had read the plea agreement. Defendant was offered more time to go over the form with his attorney. He said he discussed the plea with his attorney, was satisfied with the services of his attorney and had asked all the questions he wanted of the attorney. Defendant also said nobody forced, threatened or coerced him into entering the plea. Defendants are bound by their sworn answers during the colloquy. Iacono v. State, 930 So.2d 829, 831-832 (Fla. 4th DCA 2006). As to Defendant's claim regarding the scoresheet, Defendant has failed to state prejudice. Based on the above, claim 1 is DISMISSED in part and DENIED in part.

(Dkt. 15, Ex. 5) (court's record citations omitted).

After Petitioner amended his motion, the court denied this claim: "The Court . . . forwarded claims 1, 2, and 3 to the State for a Response. As to claim 1, the State argued that the record refuted the Defendant's claim. . . . After review of the State's arguments, citations, and attachments to its Response, adopted and incorporated herein, the Court agrees." (Dkt. 15, Ex. 9.)[2]

---

[2] Before federal habeas relief can be granted under § 2254, a petitioner must exhaust state court remedies available for challenging his conviction. 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires providing "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process . . ." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003). Respondent contends that Grounds One and Four are unexhausted, resulting in their procedural default, because Petitioner did not raise them in his collateral appeal. Respondent is correct that Petitioner did not challenge the denial of Grounds One and Four on appeal. (Dkt. 15, Ex. 11.) In Florida, when a postconviction motion is summarily denied, an appellate brief is optional. Fla. R. App. P. 9.141(b)(2)(C). Therefore, a defendant who chooses to file a brief upon summary denial of his postconviction motion is not required to raise all postconviction claims in order to exhaust them. *See Darity v. Sec'y, Dep't of Corr.*, 244 Fed. App'x 982, 984 (11th Cir. 2007) ( "[A] petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief."); *Cortes v. Gladish*, 216 Fed. App'x 897, 899 (11th Cir. 2007) ("Cortes's appeal did not follow an evidentiary hearing, and, therefore, he was not required to file an appellate brief. Furthermore, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion."). Therefore, Grounds One and Four are not deemed

The State's Response also determined that counsel properly advised Petitioner.  "Counsel's advice was correct.  Defendant was charged with Robbery with a Firearm which is a first degree felony, Possible Life, with a 10 year mandatory minimum.  He was also charged with carrying a concealed firearm, a third degree felony."  (Dkt. 17-1, p. 1.)  The Response continued, "Defendant complains that counsel threatened him by telling him of possible consequences.  In view of the real chance of a life sentence, this was an appropriate and effective practice."  (Id., pp. 7-8.)

Additionally, the Response concluded that "defendant cannot show prejudice."  (Id., p. 2.) It stated:

> In considering the totality of the circumstances in this case, the Court must consider the evidence available to the State. . . . Such evidence clearly shows that defendant had little choice but to try and get the best plea he could because there was no reasonable possibility that he would not have been convicted.

(Id.)  The Response then set forth the evidence against Petitioner as follows.  Petitioner entered Riverside Bank on March 9, 2010. (Id., p. 3.)  He gave the teller a note that stated, "This is a holdup. I have a gun, put the money in the bag." (Id.)  The teller put money, "bait money," and an electronic device in a bag and gave it to Petitioner.  (Id.)  A photograph of Petitioner at the counter was taken. (Id., p. 4.)  After he left the bank, officers located and stopped Petitioner.  (Id.)  An officer recovered money, and found a revolver in Petitioner's waistband. (Id.)  After receiving *Miranda*[3] warnings, Petitioner made incriminating statements about the robbery and said that he had a gun.  (Id., pp. 4-5.) He also stated that he was going to rob the bank the week prior, but lost his nerve twice. (Id., p. 4.) Interviews with a bank employee revealed that Petitioner had been to the bank the previous week and

---

unexhausted due to Petitioner's failure to raise them on collateral appeal.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

appeared suspicious.  (Id., p. 3.)

The State's Response continued:

There is no reasonable basis to argue that these facts would not have lead [sic] to a conviction.  Failure to convict with these facts can only occur if the jury did not follow the law.  That is not a viable ground for prejudice.  "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like."  Sanders v. State, 946 So.2d 953, 956 Fla. 2006) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.)

(Id., p. 5.)  The Response further concluded that Petitioner's allegations about being forced or

threatened into entering the plea were contrary to his representations at the change of plea hearing:

The plea colloquy is also part of the consideration.  Defendant now makes claims in direct contrast to his statements under oath on the record.  "A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case.  What is said and done at a plea conference carries consequences.  *See Iacono v. State*, 930 So.2d 829, 831-32 (Fla. 4th DCA 2006) (recognizing that defendants "are bound by their sworn answers" during a plea colloquy)."  Scheele v. State, 953 So.2d 782, 785 (Fla. 4th DCA 2007).

(Id.)  The Response concluded:

In summary, the claim set forth by defendant is directly refuted by defendant's own statements on the record.  He testified that he understood the plea and that he did not want further time with his lawyer for further explanations, that he was not forced or coerced and that he knew the plea was in his best interest.  This claim should be summarily denied.

(Id., p. 9.)

Petitioner does not show that counsel coerced him into entering the plea by telling him he

would receive 40 years to life in prison on count one.  The state court found that counsel provided

accurate advice about the sentence Petitioner faced for robbery or robbery with a firearm.  Even

assuming counsel incorrectly informed Petitioner of what his sentence was likely to actually be had

he been convicted at trial, as Petitioner appears to assert, this type of inaccurate prediction is not a

basis to find that counsel was ineffective.  *See, e.g., United States v. Himick*, 139 Fed. App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years when, in fact, he faced a ten-year minimum mandatory sentence).  Moreover, the record reflects that Petitioner was informed of the maximum term that he faced upon conviction, and that he was not forced or coerced into entering the plea.

The aspect of Petitioner's claim alleging counsel coerced him by misadvising him that if he did not enter a plea he would receive 15 years in prison on count two is unexhausted because Petitioner did not raise it in his postconviction motion or amended postconviction motion.  (Dkt. 15, Ex. 4, p. 4, Ex. 6, pp. 4-5.)  Notwithstanding,[4] it provides no relief.  The record is clear that Petitioner pleaded to count two after the court informed him that the maximum term he could receive for that count was five years, and that prior to entering the plea, he signed a plea form that provided the maximum penalty for count two was five years.  (Dkt. 15, Ex. 1; Ex. 2, pp. 4-5.)  The record also shows that Petitioner was not forced or coerced into entering the plea, that he was satisfied with counsel's advice, and that he believed entering the plea was in his best interest.

---

[4] In his postconviction motions, Petitioner made the distinguishable claim that counsel told him if he did not plead, he would receive a 15-year sentence for robbery–as opposed to robbery with a firearm, the offense charged in count one–but made no claim concerning what sentence counsel told him he would receive for count two, carrying a concealed firearm.  The Response does not address the lack of exhaustion, and resulting procedural default, of Petitioner's claim with respect to count two.  However, the claim is without merit for the reasons addressed.

Petitioner also argues that counsel was ineffective for "failing to adequately explain the plea." Interpreting this claim as the allegation raised in his postconviction motion that counsel failed to read the plea form to him or explain the plea or scoresheet, it affords no relief.   The plea colloquy reflects that Petitioner read the plea form, discussed it with counsel, did not want additional time to review the form with counsel, had asked counsel all the questions he wanted to ask about the form, and understood the consequences of the plea.   Petitioner does not demonstrate deficient performance by counsel.

Additionally, Petitioner does not demonstrate prejudice because he fails to allege facts showing a reasonable probability that he would have proceeded to trial absent the alleged misadvice. *See Hill*, 474 U.S. at 59.   By entering his negotiated plea, Petitioner resolved both charges for an overall sentence of ten years in prison, followed by three years of probation.   This sentence was significantly lower than the possible life sentence he faced upon conviction, and the ten-year mandatory minimum prison sentence for robbery with a firearm was the shortest period of incarceration that the state court could have imposed.[5]   And the State's Response, which the postconviction court adopted, set forth significant evidence of Petitioner's guilt with respect to this count.[6]   Accordingly, Petitioner fails to establish prejudice.   He does not show that the state court

---

[5] The sentencing document reflects that a 10 year mandatory term was imposed under § 775.087(2)(a), Fla. Stat., which requires this term when a person convicted of robbery actually possesses a firearm during the commission of the robbery.  (Dkt. 15, Ex. 3, p. 6.)

[6] Had Petitioner proceeded to trial on the charge of robbery with a firearm, the State would have been required to prove beyond a reasonable doubt that Petitioner took money from the person or custody of another, with the intent to either permanently or temporarily deprive the person of the money; that in the course of the taking there was force, violence, assault, or putting in fear; and that in the course of committing the robbery Petitioner carried a firearm. § 812.13(1), (2)(a), Fla. Stat.  "The rule in . . . regard [to putting in fear] is that if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved."  *State v. Baldwin*, 709 So.2d 636, 637 (Fla. 2d DCA 1998).  Furthermore, Petitioner told police that the victim was "very scared" during the incident.  (Dkt. 15, Ex. 8, Lake Wales Police Department Interview Transcript, p. 7.)  A responding officer wrote in a report that the

unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim.

Ground One warrants no relief.

**Grounds Two And Three**

In Ground Two, Petitioner alleges that counsel was ineffective for forcing him to enter an

involuntary and unknowing plea when he "had mental he[a]lth issues." (Dkt. 1, p. 7.)  In Ground

Three, Petitioner argues that counsel was ineffective for failing to obtain a mental health evaluation

of him before the plea.[7]  Specifically, he claims that:

> [D]uring the pendency of this case, Mr. Kirkland suffered from myasthenia gravis,
> an autoimmune neuromuscular disease which left him with double vision, drooping
> eyes, numb feet, no feeling of heat in the arms and legs, an inability to swallow, and
> body weakness.  As a result, Mr. Kirkland was hospitalized and was being treated
> with antidepressant medication in response to depression as a secondary
> consideration of this disease.

(Dkt. 1, p. 9.)

In his amended postconviction motion, Petitioner raised overlapping facts in support of each

claim of ineffective assistance of counsel.  Petitioner stated that he was suffering from myasthenia

gravis, that he had mental health concerns and repeatedly asked counsel for a mental health

---

victim "was visibly shaken from the incident." (Dkt. 15, Ex. 8, Lake Wales Offense Incident Number 100000810 Supplement, p. 1.)

[7] Generally, entry of a voluntary plea forecloses allegations of constitutional violations that occurred prior to the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  However, a plea does not bar review of a claim of ineffective assistance of counsel to the extent the alleged ineffectiveness bears upon the voluntariness of the plea itself.  *See Hill*, 474 U.S. at 56-57 (defendant who enters guilty plea upon advice of counsel can only attack the voluntary nature of the plea by showing that counsel's advice was not within the range of competence demanded of attorneys); *Stano*, 921 F.2d at 1150-51 ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted).  This claim, concerning counsel's performance prior to the plea, is construed as challenging the voluntariness of the plea.

evaluation, and that he was under the influence of medication at the time of the plea, did not understand what he was pleading to, and told counsel did not know "what was going on." (Dkt. 15, Ex. 6, pp. 6-9.)

In further support, Petitioner attached a report from Dr. Eric Mings, who evaluated him on March 7, 2012, over a year after the January 28, 2011 change of plea. (Dkt. 1-1; Dkt. 15, Ex. 6.) Petitioner asserts that, based on this evaluation, Dr. Mings "believed that [Petitioner's] ability to make a knowing and intelligent decision about whether to plea was adversely impacted." (Dkt. 1, p. 9.) Dr. Mings' report states that Petitioner reported being under physical and emotional stress due to myasthenia gravis, and being treated with antidepressant medication, at the time of the plea. (Dkt. 1-1, p. 2). It also reflects that Petitioner reported asking his attorney for a psychological evaluation because he felt emotional and upset. (Id., pp. 2, 4.) The report states that there was "clear documentation that [Petitioner] had been treated with antidepressant medication in the time period leading up to the circumstances of his plea bargain." (Id., p. 4.)

When Petitioner raised these claims in his postconviction motion, the state court directed the State to respond. Upon receiving the Response, the state court entered an order providing that, "As to claims 2 and 3, the State argued that there was no cause for a mental examination. After review of the State's arguments, citations, and attachments to its Response, adopted and incorporated herein, the Court agrees." (Dkt. 15, Ex. 9.)

The State's Response addressed these claims together. It cited the portion of the plea colloquy in which Petitioner told the court he was not on any medications and had not been treated or hospitalized for mental illness, and stated:

> The Defendant continued by giving relevant and appropriate answers throughout the voir dire. There was nothing to even hint that defendant was

medicated or mentally ill.  Accordingly, counsel had no basis to request a mental health examination and not doing so was neither deficient, nor was defendant prejudiced.

(Dkt. 17-1, p. 11.)  Arguing that Petitioner's letter of apology underscored his understanding of the proceedings, the Response concluded that "Counsel can neither be deficient or ineffective, nor can there be prejudice, for his refusal to obtain a mental examination for which there was no cause. Defendant's motion should be denied."  (Id., pp. 12-13.)

Petitioner does not show entitlement to relief on either claim. The record supports the state court's finding that counsel was not ineffective for failing to seek a mental health examination of Petitioner.  Petitioner does not clearly state what type of examination he believes counsel should have sought, nor does he cite any law or rule of procedure.  The Response adopted by the state court interpreted his claim to involve an examination for competency to proceed.  It cited *Krawczuk v. State*, 634 So.2d 1070, 1073 (Fla. 1994), which addresses Florida Rule of Criminal Procedure 3.210(b).  This Rule governs the procedure by which to raise the issue of incompetence to proceed. It provides that any motion by counsel for the examination of a defendant "shall contain a certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed."  Fla. R. Crim. P. 3.210(b)(1).

The federal standard for competence to proceed is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).  *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to

assist in preparing his defense may not be subjected to a trial."). Florida utilizes the same standard. *See* § 916.12(1), Fla. Stat.

Petitioner's claims about his condition and medications and his assertion that he requested counsel obtain a "mental health evaluation" do not establish that he was incompetent to proceed under the *Dusky* standard at the time of the plea. Further, even a history of mental health issues does not establish incompetency to proceed. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quoting *Card v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)).[8] Nor does Petitioner's use of antidepressant medication at or before the time of the plea establish incompetency. *See Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992) ("The administration of drugs is merely a relevant factor in the determination of competence."). And as the state court noted, the change of plea hearing transcript reflects that Petitioner provided appropriate answers to the court's questions. Accordingly, Petitioner fails to show that, in accordance with Rule 3.210(b), counsel had reasonable grounds to believe that a competency examination was warranted. Thus, he cannot show counsel was deficient for not seeking such an examination.

Nor does Petitioner show prejudice. "In order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841

---

[8] Dr. Mings' report indicates that Petitioner attempted suicide prior to the robbery but told no one and did not seek treatment. (Dkt. 1-1, p. 3.) Petitioner does not allege that he told counsel about the suicide attempt. (Dkt. 1, pp. 7-10; Dkt. 15, Ex. 6, pp. 6-11.)

F.2d 371, 375 (11th Cir. 1988)).  Petitioner does not make this showing.

Additionally, Petitioner  does not show that his plea was involuntary or that counsel forced him into entering the plea despite his "mental health issues," as he asserts in Ground Two and alleged in his postconviction motion.[9]  To the contrary, the record shows his plea was voluntary, that he was not forced into entering it, that he denied having been treated for mental illness or taking medication, and that he entered the plea because it was in his best interest.  Thus, he shows no coercion by counsel.  As addressed in Ground One, he also fails to show a reasonable probability that he would have proceeded to trial absent counsel's alleged deficiencies given the disparity between his negotiated sentence and the possible life sentence he faced upon conviction at trial, as well as the strength of the State's evidence.  Petitioner therefore fails to show prejudice.

Accordingly, Petitioner does not demonstrate that the state court's decision on Grounds Two and Three was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  He is not entitled to relief on either ground.

**Ground Four**

In Ground Four, Petitioner claims he was illegally sentenced for robbery with a firearm because "there was no evidence of a firearm during the alleged commission of the robbery."  (Dkt. 1, p. 12.)  Ground Four does not present a federal claim. Federal habeas relief is only available if a state prisoner is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  "[F]ederal courts may intervene in the state judicial process only to correct

---

[9] The Response adopted by the state court did not expressly analyze Petitioner's specific allegation that counsel forced him to enter the plea while he had mental health issues.  However, the state court's order denying his motion "in toto" identified the claim.  Therefore, this claim is presumed to have been denied on the merits.  *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83 (1983).  Accordingly, a claim that only presents a question of state law is not cognizable in a federal habeas petition. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Even assuming the claim is cognizable, it is without merit.  Petitioner's plea admitted the elements of this offense, thereby conceding that he carried a firearm in the course of committing the robbery.[10]  *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986)).  Moreover, Petitioner presents no allegations or argument in support of his allegation.  The state court denied this claim when Petitioner raised it in his postconviction motion because there was evidence Petitioner admitted carrying a firearm during the robbery.  (Dkt. 15, Ex. 5.)  The record supports the rejection of the claim on this basis.  (Dkt. 15, Exs. 5, 8.)  Petitioner does not show that the decision was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.  Ground Four warrants no relief.

It is therefore

**ORDERED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is hereby **DENIED**. The Clerk is directed to enter judgment against Petitioner and to close this case.[11]

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability ("COA").  A petitioner does not have absolute entitlement to appeal a district court's denial of his

---

[10] *See* § 812.13(2)(a), Fla. Stat.

[11] Petitioner does not seek an evidentiary hearing, nor is he entitled to one.  *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

habeas petition. 28 U.S.C. § 2253(c)(l). A district court must first issue a COA. *Id.* Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id.*; *Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the procedural determination that his claims were procedurally defaulted was correct, or whether the petition stated a valid claim of the denial of a constitutional right. And because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

**ORDERED** in Tampa, Florida, on ___JANUARY   25th_____, 2016.

JAMES D. WHITTEMORE
United States District Judge

SA:mh
Copy to:
*Pro se* Petitioner
Counsel of Record